```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
ROBERT TAYLOR, individually and derivatively on                  :
behalf of BLUE TREE MANAGEMENT LLC,                              :
                                                                 :
                              Plaintiff,                         :          23-cv-8409 (LJL)
                                                                 :
                      -v-                                        :       MEMORANDUM AND
                                                                 :            ORDER
ANIELLO ZAMPELLA, CHAD RUSSO, PIERRE                             :
BASMAJI, and COTTONWOOD VENDING LLC,                             :
                                                                 :
                              Defendants.                        :
                                                                 :
-----------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/5/2024

LEWIS J. LIMAN, United States District Judge:

Plaintiff Robert Taylor ("Plaintiff" or "Taylor"), suing individually and derivatively on behalf of Blue Tree Management LLC ("Blue Tree") moves, pursuant to 28 U.S.C. § 1452(b), to remand this case to New York State Supreme Court, New York County. Dkt. No. 8.

## BACKGROUND

Plaintiff is an entrepreneur in the cryptocurrency industry, starting a business that sets up digital kiosks called "BTMs" that serve as automated teller machines for Bitcoin, where customers can buy or sell the virtual currency Bitcoin for cash at physical locations in New York City, including grocery stores and bodegas. Dkt. No. 1-2 ¶ 31. Defendants Aniello Zampella ("Zampella") and Chad Russo ("Russo") are experienced virtual currency traders. *Id.* ¶ 36. In early 2015, after he received notice from the New York Department of Financial Services ("DFS") that a license ("BitLicense") was required to operate a business of receiving or transmitting virtual currency (including BTMs), Taylor was introduced to Zampella who had already started the process of obtaining a BitLicense through his wholly-owned company Defendant Cottonwood Vending LLC ("Cottonwood"). *Id.* ¶¶ 33, 35, 37. Plaintiff, Zampella,

and Russo agreed for form a joint venture called CoinBTM to set up licensed BTMs in New York and elsewhere. *Id.* ¶ 38. Although the three agreed to be equal 1/3 partners in CoinBTM, Zampella and Russo, along with co-defendant Pierre Basmaji (CoinBTM's attorney), persuaded Plaintiff to agree to a two-tier structure in which Zampella would remain the sole owner of Cottonwood, the applicant for the BitLicense; Plaintiff and Russo would each have 37% interests in a new company named Blue Tree that would be set up as CoinBTM's exclusive management company; and the profit share of CoinBTM would be achieved by funneling 10% of the joint venture's profits to Cottonwood and the remaining 90% to Blue Tree. *Id.* ¶¶ 39–44. Thereafter, in reliance on Defendants' representations that the arrangement would be formalized through written documents, Plaintiff invested $88,000 in CoinBTM, assigned valuable placement agreements and leases to the joint venture, removed his active BTMs and replaced them with new jointly-purchased BTMs, scouted new locations, secured new placement agreements and leases, and personally installed new BTMs for the joint venture. *Id.* ¶¶ 48–51. He also developed new strategies to grow the business and acted as the joint venture's sole customer-facing technical representative, lead on-site technician for BTM malfunctions, and lead marketing officer. *Id.* ¶ 52.

But the documents never came and the partnership began to fracture in late 2015 and early 2016. Plaintiff learned that Russo was a convicted felon. *Id.* ¶ 55. In March 2016, Zampella and Plaintiff agreed to eject Russo as manager of Blue Tree, leaving Plaintiff as its sole manager. *Id.* ¶ 58. In April 2016, Defendants made their move to push Plaintiff out of CoinBTM. *Id.* ¶ 59. Zampella and Basmaji told Plaintiff that (i) he was not entitled to any of CoinBTM's profits as these would all go to Cottonwood, and (ii) Blue Tree had no value. *Id.* ¶ 61. On April 21, 2016, Zampella, Russo, and Basmaji purported to remove Plaintiff as

manager of Blue Tree and to install Basmaji as manager. *Id.* ¶ 62. Cottonwood then severed its relationship with Blue Tree. *Id.* ¶ 63. Although Cottonwood (doing business as CoinBTM) obtained its BitLicense in January 2019 and has grown into the largest BTM network in New York, generating profits in excess of $100 million, it has paid nothing to Plaintiff. *Id.* ¶¶ 65–68.

On February 22, 2022, Plaintiff filed this action in New York State Supreme Court, New York County, on behalf of both himself individually and Blue Tree derivatively. The complaint alleges claims individually on behalf of Taylor and derivatively on behalf of Blue Tree for breach of contract for failure to honor the oral joint venture agreement. *Id.* ¶¶ 72–82. Plaintiff also asserts claims for: unjust enrichment against Zampella, Russo, and Cottonwood, *id.* ¶¶ 83–88; fraud against Zampella, Russo, and Basmaji, *id.* ¶¶ 89–94; breach of fiduciary duty against Zampella and Russo, *id.* ¶¶ 95–98; and an accounting against all Defendants, *id.* ¶¶ 99–101.

On August 24, 2023, Cottonwood, as debtor and debtor in possession, filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York. Dkt. No. 1 ¶ 4.

On September 22, 2023, Cottonwood removed the instant case to this Court on the grounds that it was related to Cottonwood's bankruptcy proceeding in the United States Bankruptcy Court for the Eastern District of New York. Dkt. No. 1. Cottonwood asserted that the Court had jurisdiction over the state court action under 28 U.S.C. §§ 1334(b) and 1452(a) and Federal Rule of Bankruptcy Procedure 9027 because the state court action was a civil proceeding concerning estate assets (including but not limited to the ownership of the debtor) and was therefore core under 28 U.S.C. § 157(b) and, to the extent the state causes of action were not deemed core, they were within the Court's "related to" jurisdiction under 28 U.S.C. § 1334(b). *Id.* ¶ 7.

On November 16, 2023, the Honorable Nancy Lord, United States Bankruptcy Judge in the Eastern District of New York, converted Cottonwood's Chapter 11 case to a Chapter 7 bankruptcy pursuant to 11 U.S.C. § 1112(b). Dkt. No. 8-4 at 52–57. Judge Lord concluded that it was appropriate to appoint a trustee to bring avoidance or fraudulent conveyance actions against Zampella and to liquidate whatever assets were in the possession of the estate. *Id.* at 57:6–14.[1]

On December 15, 2023, Plaintiff filed this motion to remand. Dkt. No. 8. The motion is unopposed.

## DISCUSSION

Plaintiff moves to remand this action to the New York State Supreme Court, New York County, on equitable grounds. Section 1452(b) of Title 28 permits a court to which a claim or cause of action has been removed on grounds that it is related to a bankruptcy case to "remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b). An "equitable" ground is one that is "fair and reasonable." *In re Cathedral of the Incarnation in the Diocese of Long Island*, 99 F.3d 66, 69 (2d Cir. 1996). Courts consider a number of factors in deciding whether to remand under this section, including:

> [i] the effect on the efficient administration of the bankruptcy estate; [ii] the extent to which issues of state law predominate; [iii] the difficulty or unsettled nature of the applicable state law; [iv] comity; [v] the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; [vi] the existence of the right to a jury trial; and [vii] prejudice to the involuntarily removed defendants.

*Joseph & Kirschenbaum LLP v. Tenenbaum*, 2020 WL 242374, at *5 (S.D.N.Y. 2020) (alteration in original) (quoting *CMM Pathfinder Pompano Bay, LLC v. Compass Fin. Partners, LLC*, 396

---

[1] On December 4, 2023, Cottonwood moved to reconsider Judge Lord's decision converting the Chapter 11 case to a Chapter 7 case. Dkt. No. 52, 23-43027 (Bankr. E.D.N.Y.). That motion remains pending.

4

B.R. 602, 607 (S.D.N.Y. 2008)); *see also Drexel Burnham Lambert Grp., Inc. v. Vigilant Ins. Co.*, 130 B.R. 405, 407 (S.D.N.Y. 1991).

Each of those factors favors remand here.  As for the first, remand would not undermine the efficient administration of the estate.  Because Cottonwood's bankruptcy case is now proceeding under Chapter 7, the trustee will liquidate whatever assets remain in the estate.  *See In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 252 (Bankr. S.D.N.Y. 2007).  The prosecution of this case would not impede that function.  Plaintiff does not seek to bring claims on behalf of the estate.  And Plaintiff represents, without contradiction, that the "primary relief" he seeks "is a money judgment against non-debtor Zampella."  Dkt. No. 8-6 at 8.  Thus, "[w]hether or not Defendants are liable to Plaintiff[] . . . will not affect the distribution of property of the estate." *Keybank Nat'l Ass'n v. Franklin Advisers, Inc.*, 600 B.R. 214, 233-34 (S.D.N.Y. 2019); *see also Skinner v. Janus*, 2000 WL 432806, at *3 (W.D.N.Y. Apr. 14, 2000).  At most, "the outcome of this case could only reduce the estate's liabilities."  *Joseph & Kirschenbaum LLP*, 2020 WL 242374, at *6.

The second, third, and fourth factors also favor remand.  The complaint "turns entirely on questions of New York law," *Digital Satellite Lenders, LLC v. Ferchill*, 2004 WL 1794502, at *6 (S.D.N.Y. Aug. 10, 2004), and "[n]one of [Plaintiff's] claims implicate any federal or bankruptcy law issues," *In re Am. Equities Grp., Inc.*, 460 B.R. 123, 129 (Bankr. S.D.N.Y. 2011).  Accordingly, "[t]his 'is a state law action and a state court is better able to respond to a suit involving state law.'" *Drexel*, 130 B.R. at 408 (quoting *Midatl. Nat'l Bank/Citizens v. Comtek Elecs., Inc.*, 23 B.R. 449, 451 (Bankr. S.D.N.Y. 1982)); *see Renaissance Cosms., Inc. v. Oleg Cassini, Inc.*, 2000 WL 890191 at *3 (S.D.N.Y. July 5, 2000).  "The state courts have the greatest interest in resolving issues of state law."  *Sokola v. Weinstein*, 2020 WL 3605578, at *17

5

(S.D.N.Y. July 2, 2020). Although the state law claims do not appear to be complex, the factual setting is novel and, in any event, the state court is already familiar with the case. *See Renaissance Cosms.*, 2000 WL 890191 at *3. In addition, "comity considerations dictate that federal courts should be hesitant to exercise jurisdiction when state issues substantially predominate." *Sealink Funding Ltd. v. Bear Stearns & Co. Inc.*, 2012 WL 4794450, at *4 (S.D.N.Y. Oct. 9, 2012); *see also Stahl v. Stahl*, 2003 WL 22595288, at *3 (S.D.N.Y. Nov. 7, 2003) ("New York State has a strong interest in having its own courts enforce its laws.").

   As to the fifth factor, Cottonwood premised its removal petition on the notion that the State Court action was a core proceeding which concerned estate assets, including but not limited to the ownership of the Debtor. Dkt. No. 1 ¶ 7. But that premise is false. "Core proceedings are those that are found to be 'arising under' the Bankruptcy Code or 'arising in' a bankruptcy case." *In re Robert Plan Corp.*, 777 F.3d 594, 596 (2d Cir. 2015) (quoting *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108–09 (2d Cir. 2006)). "Proceedings 'arising under' the Bankruptcy Code are those 'that clearly invoke substantive rights created by federal bankruptcy law.'" *Id.* (quoting *MBNA Am. Bank*, 436 F.3d at 108–09). "Proceedings 'arising in' a bankruptcy case are those 'claims that are not based on any right expressly created by [the Bankruptcy Code,] but nevertheless, would have no existence outside of the bankruptcy.'" *Id.* at 596–97 (quoting *Baker v. Simpson*, 613 F.3d 346, 350–51 (2d Cir. 2010)). Plaintiff's claims arise under the state law of New York, not the Bankruptcy Code, and concern events and agreements that preceded Cottonwood's bankruptcy filings by years. They therefore exist entirely independent of the Code and the bankruptcy case. *See Libertas Funding, LLC v. ACM Dev., LLC*, 2022 WL 6036559, at *4 (E.D.N.Y. Oct. 7, 2022). Although the case falls within the Court's bankruptcy jurisdiction,

its degree of relatedness is remote.  *See Universal Well Servs., Inc. v. Avoco Nat. Gas Storage*, 222 B.R. 26, 31 (W.D.N.Y. 1998).

The sixth factor further favors remand.  Plaintiff has asserted his right to a jury trial, a right that—if the case were transferred to the Eastern District of New York and then referred by that court to the Bankruptcy Court—the Bankruptcy Court might not be able to honor.  "Because a bankruptcy court cannot conduct a jury trial absent special designation by the district court and the consent of all parties, the presence of a Seventh Amendment jury trial right in a removed action weighs heavily in favor of remand." *Kerusa Co., LLC v. W10Z/515 Real Est. Ltd. P'ship*, 2004 WL 1048239, at *6 (S.D.N.Y. May 7, 2004) (Lynch, J.) (citation omitted); *see also Schumacher v. White*, 429 B.R. 400, 408 (E.D.N.Y. 2010); *Scherer v. Carroll*, 150 B.R. 549, 552 (D. Vt. 1993).

Finally, as to the seventh factor, while none of Cottonwood's co-defendants complain about removal, the Court would not expect them to.  *See Marah Wood Prods., LLC v. Jones*, 534 B.R. 465, 478 (D. Conn. 2015).  Indeed, Zampella is the owner of Cottonwood, he appears to be its alter ego, and he ostensibly removed this case in order to get it away from the New York State Supreme Court.  But, notwithstanding Zampella's apparent efforts to litigate this case in federal court, he has "not point[ed] to any prejudice if this matter is remanded." *In re New 118th LLC*, 396 B.R. 885, 894 (Bankr. S.D.N.Y. 2008).  In any event, "actions have already been taken in the state court proceeding . . . , [so] retention of jurisdiction by federal court would result in significant, prejudicial delay in matter that could be resolved in an expeditious manner in the state court forum." *Ventricelli v. Nicklin*, 2020 WL 132334, at *8 (N.D.N.Y. Jan. 13, 2020).  Moreover, allowing this action to proceed in bankruptcy court would prejudice Plaintiff by requiring him to retain bankruptcy lawyers, incurring expenses that should be entirely

unnecessary in what is otherwise a purely state-law, state-court case.  Thus, the Court concludes that "the involuntarily removed parties are not likely to be prejudiced by being required to litigate in state court." *In re Am. Made Tires Inc.*, 2016 WL 3448395, at *13 (Bankr. E.D.N.Y. June 14, 2016).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand, Dkt. No. 8, is GRANTED.  The Clerk of Court is respectfully directed to take all steps necessary to remand this action to the New York State Supreme Court, New York County, without delay and to close this case.

SO ORDERED.

Dated: February 5, 2024
       New York, New York

_____
LEWIS J. LIMAN
United States District Judge